In the Matter of K. Pascoe Grenfell, Respondent.
Gertrude Lawyer, as Chairman of The People's League for Government American Style, Appellant.

Third Department, October 8, 1945.

*McDonald King*, attorney for appellant.

*Richmond D. Moot*, attorney for respondent.

*Arlen T. St. Louis, Corporation Counsel*, attorney for City Clerk, City of Schenectady, N. Y.

FOSTER, J.   On June 26, 1945, there was filed in the office of the Clerk of the City of Schenectady a petition for submission to the electors of the city of a proposed local law amending the charter of the city.   The petition purported to be filed under section 19-a of the City Home Rule Law, and for the purposes of this appeal it is conceded that the qualified signers thereof amounted in number to at least 10% of the total number of votes cast for Governor in the city at the last gubernatorial election.

In substance the petition proposes to submit to the voters of Schenectaay a local law to amend the existing form of city government, which is Plan C under the Optional City Government Law (L. 1914, ch. 444 — now repealed), by a repeal of the present system and a return to the former government under the Second Class Cities Law under which the city was governed prior to 1934.

Objections were filed to the petition, and the Supreme Court at Special Term has found the petition illegal and invalid upon three grounds.   First, that it proposes a new charter rather than an amendment; second, that a city cannot adopt a new charter merely by reference to the Second Class Cities Law; and third, that the petition is insufficient to comply with the requirements of section 19-a of the City Home Rule Law.   Proponent appeals from this decision.

With the first ground assigned by the Special Term we do not agree.   True, it was held in *Matter of Maylender* v. *Morrison* (260 App. Div. 892, affd. 284 N. Y. 575) that an amendment which was in effect a proposal to create a new city charter could not be submitted under section 19-a of the City Home Rule Law.   However, the City Home Rule Law was amended in 1944 in two very significant particulars.   The following language was added to the definitions contained in section 2: " * * * the term ' charter amendment ' means any change in an existing charter presented as such under authority of this chapter or any charter or state statute.   A charter amendment may be of any extent and may deal with any number of subjects.   A proposal presented as a charter amendment *shall not be rejected as such on the ground that it constitutes a new charter.*"   (Italics supplied.)   The language of section 19-a was also changed to

read in part as follows: " A local law amending a city charter, *however extensively,* also may be adopted  *  *  * ". (Italics supplied.) (L. 1944, ch. 602.) The words italicized were added to the former statute. A more direct legislative answer to a judicial decision can scarcely be envisaged, and we are bound to assume therefore that the construction of the former statute as exemplified in the *Maylender* case is no longer to be followed.

It should also be noted in this connection that section 20 of the City Home Rule Law, which the Special Term held was the only section under which it was proper to submit a new charter, is permissive and not mandatory. Its language so indicates and it has been so construed. (*Loening* v. *Seaman,* 290 N. Y. 527.) Moreover, section 31 of the same statute provides in part: " A permissive procedure authorized by this chapter shall not be deemed to be exclusive or to prohibit the use of any other procedure authorized by any act of the legislature, city charter or local law lawfully adopted but shall be deemed an alternative thereto ".

We think therefore that an objection to the petition on the ground it proposed amendments so extensive as to constitute a new charter may not be sustained.

However, assuming that amendments so extensive as to practically constitute a new charter may be submitted under section 19-a, we are nevertheless in accord with the Special Term that the petition in controversy is illegal and insufficient under this section. A major intent of the section is clear. The voters are entitled to know precisely the extent and nature of the proposed changes submitted. The proposal here purports to supersede the form of city government under Plan C of the former Optional City Government Law and to substitute therefor the government previously in effect under the Second Class Cities Law. Since the home rule amendments to the Constitution adopted November 6, 1923, the Second Class Cities Law has been more or less obsolete, and its provisions continued and saved only for certain purposes. (N. Y. Const., art. IX, § 13; *Ponsrok* v. *City of Yonkers,* 254 N. Y. 91.) We agree with the contention of proponent that despite this there is no constitutional or legislative prohibition against the adoption of any or all of the provisions of the Second Class Cities Law as a city charter, but if such provisions are to be adopted under section 19-a of the City Home Rule Law they must be designated specifically in the proposed local law, and otherwise in accordance with the statute. Mere blanket references to the Second Class Cities Law are not sufficient. Voters are entitled

to know from the language of the proposal itself precisely what they are called to pass upon, and should not be required by reference to examine the provisions of any statute. The fact that the city of Schenectady was governed under Second Class Cities Law prior to 1934 in no way alters this proposition. It cannot be assumed that because of this fact the voters generally are familiar with all of the pertinent provisions of such statute. The intent of the Legislature as expressed in section 19-a of the City Home Rule Law to give voters precise information is indicated by its language: " Such local law shall set forth the new matter to be added to the charter either in italics or underlined and the matter to be deleted therefrom either in brackets or with lines drawn through it * * *; but failure so to set forth any provision of the charter which is in fact superseded shall not invalidate the amendment or any portion thereof." This procedure was not followed in the instant proposal. Appellant asserts that this requirement is permissive and not mandatory. We think to the contrary that it is mandatory in the first instance if timely objection is taken, and such is the case here. In our judgment the requirement is to be overlooked only where the proposed amendment has actually been voted upon and the old charter has in effect been superseded.

For the reasons indicated the order of the Special Term should be affirmed, without costs.

Brewster, J. (concurring). I concur in the result reached in the opinion of Mr. Justice Foster and in the reasons he gives therefor, and I am in accord with the further ground upon which Mr. Justice Imrie based his decision at Special Term which is to the effect that the enactment and adoption of a wholly new charter such as is proposed, may not be accomplished under the procedure prescribed by section 19-a of the City Home Rule Law, but that such an undertaking must conform to the requirements of section 20 of that statute, notwithstanding the recent amendments to the former section.

Hill, P. J. (dissenting). Appeal from an order of the Schenectady County Special Term which determined a proposed local law to be illegal and that it should not be submitted to the electors of the city of Schenectady at the coming general election.

The title of the law reads: " A Local Law repealing the simplified form of government known as Plan C, adopted by the City of Schenectady on the sixth day of November, Nine-

teen Hundred Thirty-four and providing for a return to the form of city government defined and prescribed in the Second Class Cities Law, and for the election of officers of the said city pursuant to said Second Class Cities Law." The petition for submission described its purpose and intent " to abolish the Plan C form of government in the City of Schenectady, and to return to the form of city government prevailing in said city prior to the adoption of Plan C and as prescribed and defined in and by the Second Class Cities Law." The repeal was to be effected under the provisions of chapter 765 of the Laws of 1939 entitled " An Act to repeal the optional city government law ". The provisions of the Second Class Cities Law were to supersede the provisions of the city charter which had been amended to comply with the Optional City Government Law, city and ward officers elected as prescribed in the Second Class Cities Law, and all local laws, ordinances and resolutions inconsistent with such law repealed. The petition requested that the question to be submitted to the electors was to be as follows: " Shall the local law entitled [as earlier quoted herein]   *   *   * be adopted ".

The Special Term dismissed the petition upon the grounds (1) that the proposal was for a new charter and therefore illegal under the statute, (2) that the Second Class Cities Law had been repealed except as to cities of the State which on December 31, 1923, were cities of the second class and had not superseded or repealed the law, and therefore was not a proper source of derivation of city statutes, (3) that the petition did not " set forth the new matter to be added to the charter either in italics or underlined and the matter to be deleted therefrom in brackets or with lines drawn through it ". (City Home Rule Law, § 19-a.)

As to the first ground, the 1944 amendment (ch. 602, § 2) to section 19-a of the City Home Rule Law, " A local law amending a city charter, however extensively, also may be adopted *   *   * ", renders ineffective *Matter of Maylender* v. *Morrison* (284 N. Y. 575), and is not a valid ground of objection. The second ground, based upon the reference to the Second Class Cities Law as a source of new statutory provisions following the change proposed in the petition, if adopted, is not sustained by the petition, as it is proposed that the city return " to the form of city government prevailing in said city prior to the adoption of Plan C and as prescribed and defined in and by the Second Class Cities Law ". This is only descriptive of the type of city government desired, the

petition providing that the details thereof should be enacted by the officers provided for in the Second Class Cities Law after they had been elected and assumed the duties of their offices. As to the third objection, the requirement as to the italics, underlining, brackets and the like, section 19-a of the City Home Rule Law provides that " failure so to set forth any provision of the charter which is in fact superseded shall not invalidate the amendment or any portion thereof." The recent decision in *Matter of Steinberg* v. *Meisser* (291 N. Y. 685) involved the submission of a proposed local law entitled " A Local Law to amend the charter of the City of Long Beach for a city manager appointed and removable by an unpaid city council elected biennially on a nonpartisan ballot by proportional representation, with other changes appropriate to the efficient operation of a council-manager government." The Special Term had dismissed a petition for an order enjoining the submission, which had been affirmed by the Appellate Division, Second Department (266 App. Div. 978). The decision of the Court of Appeals reads: " Order affirmed, without costs. The proposed local law is not a new charter but an amendment to the existing charter. We decide no other question." Two of the judges dissented " on the ground that the proposed local law changes so essentially the structure of the government of the city as to constitute a new charter." While the exact import of this decision is not too clear, it seems to indicate a determination that plebiscites addressed to the issue of a change of the form of government of a city shall not be surrounded by too many technicalities and obstructions. This again is reflected in the most recent legislative amendment to the City Home Rule Law (L. 1944, ch. 602).

Section 19-a of the City Home Rule Law, as amended by the last mentioned chapter, recommends the use of italics, underlining and brackets, but says that the failure in that regard " so to set forth any provision of the charter * * * shall not invalidate the amendment or any portion thereof." In a later portion the section directs the manner and time of submission to the electors of the city if a referendum is required. The purpose of the petition and the notice of submission is to enlighten the voters on the subject matter of the amendment upon which they are to vote. The argument that the part excusing compliance with the requirement as to form is operative only if an objection to the petition is not filed, is not impressive. An objection would give added publicity to the subject matter involved, making the provision as to form less necessary. The

recommendation as to form would be more usual and useful if the amendment was to a single or a limited number of specific but not structural changes than when a general amending of a city charter is proposed. This is now permitted no matter how "extensively" the amendment may affect the charter.

The submission to the electors of the question of whether there shall be a return to the form of government prevailing prior to 1934 as defined in the Second Class Cities Law, is more understandable, and will permit the exercise of the right of franchise with more information as to the subject matter voted upon, than a proposed charter made up of italicized, bracketed and underscored parts. The electorate in 1934 were permitted to adopt the untried Plan C with less information of the effect upon their city government than is presented by a proposal to return to the former type of government. An opportunity for expression of the will of the voters as to a return to the former type of city government should not be lightly or capriciously denied.

The order should be reversed on the law, and an order made approving of the validity of the petition.

HEFFERNAN and LAWRENCE, JJ., concur with FOSTER, J.; BREWSTER, J., concurs in result in a separate memorandum; HILL, P. J., dissents in an opinion.

Order affirmed, without costs.

Leave to appeal to the Court of Appeals granted.